## Charles W. Rigdon

*v.*

## Clair E. More, Admr.

*Opinion filed February 21, 1907—Rehearing denied April 15, 1907.*

1. Appeals and errors—*whether there is any evidence tending to prove case is a question of law.* Whether there is any evidence in the record tending to support the plaintiff's case is a question of law which may be reviewed by the Supreme Court if properly preserved, notwithstanding the plaintiff's evidence is uncontradicted.

2. Same—*what preserves for review the question of plaintiff's right of recovery.* In a trial before the court without a jury, and in which the defendant offers no evidence, the question whether the plaintiff's evidence, uncontradicted, entitles him to recover, is properly preserved for review as a question of law by the trial court's refusal of plaintiff's proposition of law to the effect that the admissions proven by him were proper to be considered as evidence tending to prove his case.

3. Principal and agent—*broker cannot be deprived of commissions because principal completes sale.* A real estate broker who begins negotiations for the sale of a building for his principal, which are carried on to a final sale, cannot be deprived of his right to commissions because the principal took up and completed the negotiations himself or through another party.

4. Same—*what tends to prove contract of agency.* Admissions by the owner of a building to an agent who was trying to induce him to allow the agent to make a sale to a certain party, that the deal, as to such purchaser, belonged to another agent and that if he made the sale he would have to protect that agent in his commissions, make a *prima facie* case of the employment of the latter to make a sale of the building.

Writ of Error to the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. J. W. Mack, Judge, presiding.

Wood, Fyffe & Adcock, for plaintiff in error.

Bulkley, Gray & More, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This suit is for the recovery by plaintiff in error, a real estate broker in the city of Chicago, against the estate of William W. Strong, of $10,500 commissions claimed to be due plaintiff in error, as agent of said Strong, for the sale of certain real estate in the city of Chicago known as the Owings building, during the lifetime of said Strong. The suit was originally brought in the circuit court before the death of William W. Strong, where a trial was had resulting in a verdict for plaintiff in error, which the court set aside. Before the case was reached for trial again Strong died, and plaintiff in error filed a claim against his estate in the probate court. The claim was disallowed by that court and plaintiff in error prosecuted an appeal to the circuit court, where the cause was tried by agreement before the court. The court found the issues for defendant in error and rendered judgment against plaintiff in error for costs. From that judgment plaintiff in error appealed to the Appellate Court, where the judgment of the circuit court was affirmed, and he brings the case here by writ of error.

On the hearing in the circuit court no evidence was offered by defendant in error. On behalf of plaintiff in error John C. Fetzer testified that he was the manager of the real estate interests of the heirs of Cyrus H. McCormick, deceased, and resided in the city of Chicago; that he had known plaintiff in error about six years and had transactions with him in regard to the purchase of real estate in 1897 and 1898; that in September or October, 1897, negotiations were begun between witness and plaintiff in error with reference to the purchase by the witness for his principals, from William W. Strong, of the Owings building. He testified that his attention was brought to the building by a great many people but plaintiff in error was the first to speak to him about it; that with plaintiff in error he went over the building for the purpose of determining its char-

acter and construction and its rental value; that he then took the matter up with Cyrus H. McCormick and Mr. Butler, who was manager of the general McCormick business, with a view to effecting a purchase of the property. The witness testified plaintiff in error came to his office several times to see and talk with him about the sale, and that after taking the matter up with Mr. McCormick and Mr. Butler he went, by appointment with plaintiff in error, to see Strong but failed to meet him; that he made plaintiff in error two or three different offers for the premises that were not accepted by Strong. The witness testified his last negotiations with plaintiff in error were in December, 1897, and that after that time the matter was taken up by Edward H. Peters, and he did not know of plaintiff in error having anything further to do with the transaction which resulted in a sale of the premises to Cyrus H. McCormick in March, 1898, for the consideration of $425,000.

Edward H. Peters testified that he had been in the real estate business in the city of Chicago since 1891; that in January, 1898, he called on Mr. Strong and told him he had a purchaser for the building, and that the purchaser was Mr. McCormick. He testified Strong said the "deal belonged to Mr. Rigdon with the McCormicks, and that if the McCormicks bought the property he would have to protect Mr. Rigdon in the commission;" that he tried to convince him otherwise but could not do so. The witness was asked if he had any subsequent conversation with Mr. Strong in regard to Mr. Rigdon, and replied, "Why, most every time I called in there he would refer back to me that it was Mr. Rigdon's and he would have to recognize Mr. Rigdon in that sale." On cross-examination he was asked if he had stated all the conversation he had had with Mr. Strong with reference to plaintiff in error, and replied, "It would take about a week to do that." He testified he negotiated the sale of the property for Mr. Strong to the McCormicks with Mr. Fetzer and was paid a commission for it.

Plaintiff in error also introduced evidence as to what the usual and reasonable compensation is to a real estate broker employed to effect a sale where there is no express agreement between the parties as to the amount of such compensation.

The foregoing we believe to be all the material portions of the evidence heard at the trial.

It is contended by defendant in error that no question of law is involved for our consideration; that the plaintiff in error failed to prove any contract of employment by Strong to sell the premises; that he failed to prove that he produced a buyer ready, able and willing to make the purchase on terms acceptable to the owner, and that the judgment of the Appellate Court settles these questions of fact and is conclusive upon this court. It is true, this court can not review the evidence upon controverted questions of fact for the purpose of determining whether it sustains the finding of the Appellate Court; but when the question is raised in the trial court whether there is evidence tending to prove plaintiff's cause of action the ruling may be examined by this court as presenting a question of law. Whether the evidence tends to prove the issue may be a question of law. (*Cothran* v. *Ellis,* 125 Ill. 496.) Where there is no controversy as to the facts, whether these facts sustain the plaintiff's cause of action or the defendant's defense is a question of law. (*Snell, Taylor & Co.* v. *Pells,* 113 Ill. 145.) "Whether or not the record contains any evidence tending to establish a fact is a question of law and which we must decide." *Commercial Union Assurance Co.* v. *Scammon,* 126 Ill. 355.

At the conclusion of the evidence the trial court denied the request of plaintiff in error to hold two propositions of law. The first was, that under the evidence he was entitled to recover. The second was as follows:

"Where there is an admission of a party that he is indebted to the opposite party on account of a certain trans-

226—25

action, and such admission is the only evidence of the actual contract, then such admission may be taken as evidence tending to prove the existence of a previous contract between the parties concerning the matter referred to by the admission. So in this case the admission by the deceased, Strong, to the witness Peters, that if the McCormicks bought the property, he, said Strong, will have to protect Rigdon in his commissions, and that the deal belonged to Mr. Rigdon with the McCormicks, is evidence tending to prove the existence of the previous contract between said deceased, Strong, and said Rigdon, to pay commissions for the sale of the property in question to the McCormicks."

By the ruling of the court in denying these propositions of law the question was preserved as one of law whether appellee's evidence, uncontradicted, entitled him to a finding in his favor. We can attribute no other effect or meaning to the language of Mr. Strong to the witness Peters than an admission on his part that he had a contract or understanding with plaintiff in error by which, if the property was purchased by the McCormicks, he would be liable to plaintiff in error for commissions in making the sale. The statement was plain and unequivocal that the deal for the property with the McCormicks belonged to plaintiff in error and he would have to be protected in the commissions if that deal was consummated. According to the evidence this statement was not made once, but repeatedly, and although the witness Peters says he tried to convince Mr. Strong to the contrary, he was unable to do so.

Defendant in error contends that after December the evidence fails to show plaintiff in error had any further connection with the transaction, and the sale was consummated in March through the efforts of Peters. The evidence shows the owner of the property and the purchaser were brought together, not personally but in the negotiations which led to an examination of the building and ultimately to its purchase, by plaintiff in error. Before the final consummation

of the deal Peters came into the negotiations, and the Appellate Court says in its opinion "the sale was actually consummated by the witness Edward H. Peters, who was connected in so doing with Fetzer." It seems clear from the testimony of Peters that throughout all his negotiations with Mr. Strong the latter recognized he was under obligations to pay plaintiff in error commissions on the sale if it was made to McCormick. Peters says he so stated almost every time he called upon him about the matter.

We think the evidence makes a *prima facie* case of the employment by Strong of plaintiff in error, as a broker, to sell the real estate mentioned. Through the efforts of plaintiff in error negotiations for the sale by the purchaser were brought about, and these negotiations continued until the sale was consummated. There is no evidence of any revocation of the authority or employment of plaintiff in error or of an abandonment by him of the negotiations. Peters, who finally concluded the negotiations, was, as said by the Appellate Court, connected with Fetzer, who represented the purchaser. But if plaintiff in error had been employed by the seller to find a purchaser for the property and through his efforts the owner had been brought into communication with the purchaser, plaintiff in error could not be deprived of his commissions because the owner of the property took up and completed the negotiations himself or through another party. (*Hafner* v. *Herron,* 165 Ill. 242.) In that case it was said (p. 246) : "Nor is it always necessary that the purchaser should be actually introduced to the owner by the broker, provided it appears affirmatively that the purchaser was induced to apply to the owner through the instrumentality of the broker or through means employed by the broker. It is sufficient if the sale is effected through the efforts of the broker or through information derived from him. (*Sussdorf* v. *Schmidt,* 55 N. Y. 319; *Stewart* v. *Mather,* 32 Wis. 344; *Lincoln* v. *McClatchie,* 36 Conn. 136.) It is also true that where the seller consummates a sale of

property upon different terms than those proposed to his agent, the latter will not be thereby deprived of his right to his commissions.—*Stewart* v. *Mather, supra.*" A very instructive case, with exhaustive notes, will be found in *Hoadley* v. *Savings Bank of Danbury*, 44 L. R. A. 321.

The judgments of the Appellate and circuit courts are reversed and the cause remanded to the circuit court.

*Reversed and remanded.*