37301. DAVIS *et al.* v. CRAWFORD.

DECIDED OCTOBER 23, 1958—REHEARING DENIED
NOVEMBER 13, 1958.

*Henry M. Quillian, Jr., Bryan, Carter, Ansley & Smith,* for plaintiffs in error.

*Buchanan, Edenfield & Sizemore, Wm. F. Buchanan,* contra.

NICHOLS, Judge. The basic question here for decision is whether the evidence adduced, with all reasonable deductions or inferences therefrom, demanded the verdict directed for the defendant. Code § 110-104.

The evidence authorized the following findings: That the plaintiffs were licensed real-estate agents and the assignor of the claim was a licensed real-estate broker, that the plaintiffs were responsible for the first meeting between the defendant and the vendee of the realty, that the vendee paid the defendant the price which was asked by the defendant at the time the plaintiffs were attempting to sell the realty for the defendant under a listing contract between the defendant and the plaintiffs' assignor, and that the defendant consummated the sale through another broker, to whom the defendant paid a real-estate commission, after receiving notice that the present claim for commission would be made if such sale was so consummated by such other broker under a sales contract presented to the defendant by such broker.

The plaintiffs' action was not based on the proposition that they had procured a purchaser who was ready, willing, and able to purchase the defendant's realty under the terms of the listing contract, but was based on the theory that they were the proximate procuring cause of the *sale actually made* by the defendant through another broker.

. The defendant, the defendant in error, relies on the line of

cases exemplified by *Fox* v. *Von Kamp*, 52 *Ga. App.* 776 (184 S. E. 645), and *Jordan* v. *Dolvin Realty Co.*, 54 *Ga. App.* 472 (188 S. E. 304), to support his contention that the evidence demanded a finding that the plaintiffs were not the proximate procuring cause of the sale consummated by another broker. The plaintiffs rely on the line of cases exemplified by *Gresham* v. *Lee*, 152 *Ga.* 829 (111 S. E. 404); *Nicholson* v. *Smith & Son*, 29 *Ga. App.* 376 (115 S. E. 499); and *May* v. *Sibley*, 85 *Ga. App.* 544 (69 S. E. 2d 693). An examination of all of the above cited authorities shows that there is no conflict in the law enunciated, but only that there was a conflict in the *facts* involved in the different cases. The true rule, succinctly stated, is as follows: " 'Where property has been listed for sale with two or more real-estate brokers, and one of them with the knowledge of the owner, has interested a customer in the purchase, and while negotiations with the broker are still pending, the owner proceeds to close the sale with the same customer through another broker, the latter being the first to present the customer as ready, able, and willing to buy, and actually offering to buy, at the price and on the terms stipulated by the owner; and where the owner, pending such negotiations, has committed no act of bad faith, the efforts of the broker thus actually closing the trade cannot be regarded, as a matter of law, as the procuring cause of the sale, so as to exclude the claim of the other broker against the owner for commissions. In such a case the owner must proceed at his peril, in effecting the sale and paying the commissions to the broker thus closing the sale.' . . . 'Where the services of a broker, as well as those of another broker, have conjointly contributed to the successful termination of negotiations resulting in the sale of real estate for an owner, the question of which of the brokers is entitled to commissions from the owner for effecting such sale depends upon whose efforts were the primary, proximate, and procuring cause of the sale negotiated. The broker whose services and efforts were the primary, proximate, and procuring cause of the sale would be entitled to the commissions. . . Under such circumstances it becomes a question of fact as to which broker was the proximate, predominating, and procuring cause of the sale . . .'

*Gresham* v. *Lee* [152 *Ga.* 829, 111 S. E. 404]." *Nicholson* v. *Smith & Son*, 29 *Ga. App.* 376 (1, 2), supra.

Under the above, the real question here for decision is: Was there any competent evidence adduced on the trial of the case to show that the plaintiffs were still negotiating with the purchaser at the time the defendant agreed to sell to such purchaser through another broker?

The plaintiff Cravey testified that he was handling negotiations with the purchaser up until he found out that the defendant had agreed to sell to the purchaser through another broker, and while the defendant sought to impeach this testimony by a deposition of the witness taken prior to the trial, the witness stated that, if the deposition showed that he had ceased negotiations prior to the time the sale agreement was consummated, it was wrong.

The testimony of this witness, one of the plaintiffs, was not contradictory or equivocal so as to require it to be construed most strongly against him, and even if there was evidence tending to impeach this witness (which need not be decided), it was still a question for the jury as to the weight to be given such evidence. See *Swift & Co.* v. *Hall*, 94 *Ga. App.* 239 (94 S. E. 2d 145), and citations.

The evidence did not demand a verdict for the plaintiffs, but neither did the evidence demand a verdict for the defendant, and it was error for the trial court to direct a verdict for the defendant. Accordingly, the judgment of the trial court denying the plaintiffs' amended motion for new trial must be reversed.

*Judgment reversed. Gardner, P. J., Carlisle and Quillian, JJ., concur. Felton, C. J., and Townsend, J., dissent.*

FELTON, Chief Judge, and Townsend, Judge, dissenting. The decision in *Nicholson* v. *Smith & Son*, 29 *Ga. App.* 376 (115 S. E. 499) is based upon *Gresham* v. *Lee*, 152 *Ga.* 829 (111 S. E. 404) which was an answer to a question certified by the Court of Appeals to the Supreme Court and states the rule as enunciated in the majority opinion. Thus, the rule means simply this: Where it appears that (1) the first real-estate broker has interested the purchaser, this fact known to the seller, and (2) that negotiations are still pending through such broker, and (3)

with knowledge of this the seller sells to the purchaser through another broker, and (4) *nothing further appears* there is no inference that the second broker rather than the first is entitled to commissions, but it remains a question of fact.

Something further appears in this case. Although the plaintiffs testified that their negotiations were still pending, it appears by undisputed evidence that the following had occurred: the purchaser stated to them that he could not make the purchase unless he (a) sold certain stock, or (b) sold a certain lot. A proposed stock trade fell through. A lot trade was then proposed. The purchaser proposed that his wife's lot be taken by the seller on the trade at a value of $6,000 and the seller offered to take it at $4,000. Thus, the negotiations between the purchaser and the seller had reached somewhat of a stalemate when the second broker entered the scene. The second broker then himself offered to purchase the lot for his own use at a price of $5,500. The purchaser by thus getting rid of his lot, in this three-cornered deal was enabled to and did have funds to close the contract of sale and purchase the farm property and this is what happened.

Under these circumstances, admitting that there was a conflict in the evidence as to whether negotiations between the purchaser and the plaintiffs were still pending in the sense that the plaintiffs still hoped to work out some way to get him to buy the land, nevertheless the evidence also conclusively shows that the purchaser refused to buy unless his condition—the sale of his wife's lot—was met, and that the plaintiffs were unable to meet this condition, and never did meet it or have any plan whereby they could meet it. The purchaser would not have bought the farm land through the plaintiffs *unless he changed his mind about the financing,* and the plaintiffs would not otherwise have procured his contract of sale *unless they met his condition.* They had no exclusive contract; they were simply taking a chance, and they were unable to work out a trade satisfactory to the purchaser. At that point another broker, by personally buying the lot, did work out such a trade.

We are accordingly of the opinion that while the fact of sale, as stated in the *Gresham* case, creates no legal inference that

the second broker was the procuring cause thereof, nevertheless, all of the facts testified to show without dispute that he was as a matter of fact the sole procuring proximate cause. The purchaser testified without contradiction that the purchase of his wife's lot by the second broker was the controlling reason why he offered to buy the property on the terms and for the price fixed by the owner.