Lake Shore National Bank, Appellee, v. Charles Kulwin, Harry A. Nichols and Cook and Jackson, Inc., Defendants.
On Appeal of Charles Kulwin, Appellant.

. Gen. No. 44,113.

Opinion filed November 3, 1947.
Released for publication November 18, 1947.

I. Archer Levin, of Chicago, for appellant.

Sonnenschein, Berkson, Lautmann, Levinson & Morse, of Chicago, for appellees; John J. Faissler and Edwin A. Rothschild, both of Chicago, of counsel.

Mr. Justice Feinberg delivered the opinion of the court.

Plaintiff filed its bill of interpleader in the circuit court against the defendants, Nichols, Cook & Jackson, Inc. and Charles Kulwin, to have determined which of the defendants were entitled to a real estate broker's commission in the sale of real estate made by the plaintiff. Each of the defendants answered, claiming to be the broker who procured the purchaser, and making conflicting claims to the commission involved. The cause was referred to a master to report his conclusions of fact and law. The master made his report in favor of defendant Charles Kulwin and recommended that a decree be entered awarding him the amount of $2,650.20. Exceptions were filed by the other defendants to the master's report, and upon a hearing before the chancellor the exceptions were sustained and a decree entered in favor of the defendants Nichols and Cook & Jackson, Inc., from which decree defendant Kulwin appeals.

Plaintiff was the owner of a parcel of real estate in Chicago and, in an effort to sell it, issued a circular soliciting bids for the property. The circular contained the statement "Full commission to broker." It is apparent that plaintiff prepared the form of offer required to be submitted by the bidders.

On February 16, 1944, a written offer, upon plaintiff's form, to purchase the property was submitted to plaintiff by M. K. Irwin, at a price of $50,000 and with the offer $2,500 was deposited as earnest money. Paragraph 14 of the written offer recited that plaintiff shall pay a broker's commission in the amount

fixed in the present schedule of commissions of the Chicago Real Estate Board, applicable to this sale if the within sale shall be consummated but not otherwise, to Charles Kulwin, "who is the only broker in any way involved in this offer." Defendant Kulwin affixed his signature to the following statement, appearing in the form of offer: "The undersigned as broker mentioned in the foregoing document has read and concurs in the provisions of paragraph 14 thereof, and warrants that he is a broker duly and regularly licensed by the City of Chicago and State of Illinois."

Attached to the form of written offer, and made a part of it was a written statement prepared by plaintiff entitled "Statement of proposed procedure in the event that more than one offer is received for the subject property."

Paragraph 3 of said statement provided:

"Any person making an offer subsequent to the original offer shall be designated as 'subsequent bidder,' and all offers received subsequent to the original offer shall be known as 'subsequent offers.'

"Subsequent bidders shall be given to understand that their offers will be considered final and that no opportunity will be given to them to improve any such subsequent offers, either as to amount or terms.

". . . .

"Subsequent bidders shall be advised that the original offerer will be given the opportunity to meet or better subsequent offers."

Paragraph 4 recited:

"The original offerer will be given the opportunity to meet or better subsequent offers within such time as the Trustee in its sole discretion shall deem reasonable under the circumstances, it being the intention to favor the original offerer in the absence of any disadvantage to the Trust."

Paragraph 5 recited:

"The Trustee shall have the right to decide in its sole discretion which offer is the best offer for its purposes and it shall be specifically understood that its preference of one offer over another may be predicated either upon the amount, or the terms, or both. *In any event the decision of the Trustee shall be final and no liability shall be asserted or enforced against it by the maker of any rejected offer or by any broker named therein.*" (Italics ours.)

The written offer submitted by Irwin contained the usual specific provisions to be found in the ordinary contract for the purchase of real estate, relating to purchase price, title, taxes, leases, time of consummation, etc., which together with the written acceptance by plaintiff constituted the contract of purchase.

After the receipt of the offer from Irwin but before its acceptance by plaintiff, defendants Nichols and Cook & Jackson, Inc. procured Adolph Rich, to deliver to plaintiff on March 18, 1944, upon plaintiff's form, an offer in writing for the purchase of this property for the sum of $55,750 and with it a deposit of $3,500 as earnest money thereunder. This offer provided for the payment by plaintiff of a broker's commission, one-third to each of the following, Cook & Jackson, Inc., Harry A. Nichols and David Zisook. The offer also provided that plaintiff have until March 24, 1944, to accept or reject said offer.

On March 21, 1944, plaintiff notified Irwin of the subsequent offer of Rich, and within the time limited by the plaintiff for Irwin to meet the increased offer the latter delivered to plaintiff in writing an amended offer increasing the purchase price from $50,000 to $55,750 and increasing the earnest money deposit from $2,500 to $3,500. On March 24, 1944, plaintiff notified Irwin in writing that his offer, as amended, was accepted, and on the same date notified Rich in writing

that Irwin had increased his original offer to $55,750, and that Rich's offer was rejected. The earnest money deposited by him was returned by plaintiff.

On April 6, 1944, Irwin assigned all of his right, title and interest in his accepted offer, as amended, to David Zisook, one of the brokers named in the Rich offer. The assignment also included the following provision: ". . . the undersigned hereby guarantees the performance by said David Zisook of all of the covenants and agreements on the part of the undersigned in said contract contained." The plaintiff by said assignment was directed to make and execute a deed "under the terms and provisions of said contract to said David Zisook." Plaintiff executed a written consent to said assignment, on the express condition, however, "that the assignor, M. K. Irwin, shall remain liable for the prompt payment of the sums to be paid thereunder and the performance of all of the covenants and agreements on his part to be performed as therein mentioned, and that no further assignment of said contract shall be made without the written assent first had thereto."

It clearly appears from the record that Zisook, in taking this assignment from Irwin, acted on behalf of Rich and his associates interested in acquiring this property, and procured the deed in his name by fully complying with the terms of the amended offer of Irwin.

Defendant Kulwin's theory is that Rich was not a purchaser in his own right from the plaintiff, but that Rich, and those whom he represented, acquired the property only through the assignment from Irwin to Zisook, and that he, having procured Irwin as the original purchaser, was entitled to the commission.

Defendants Cook & Jackson, Inc. and Nichols argue that the evidence shows that Irwin, because of his then service in the army and his transfer overseas, was unwilling to go through with his offer to purchase

the property from the plaintiff and desired not to be burdened with the property while in service overseas. Therefore, they, as brokers and not Kulwin, procured the real purchasers, and were entitled to the commission. They argue that the evidence clearly demonstrates that Irwin never signed the assignment to Zisook and that Irwin on the witness stand admitted it was not his signature. While it is true that the assignment was not signed by Irwin, yet Irwin testified he had given his sister and Greenfield, an office associate of his, power of attorney. Irwin testified that Greenfield had authority from him to execute the assignment; that Greenfield represented him as his attorney in all of his real estate transactions and investments. Neither Irwin nor plaintiff have questioned the validity of the assignment. The assignment was accepted, the title procured through it, and these defendant brokers are in no position now to question it.

The real test in the instant case, in determining which of the brokers is entitled to the commission, is whether such broker, had he sued plaintiff, could recover. In any suit against the plaintiff for their claimed commission, defendants Nichols and Cook & Jackson, Inc. would have to prove under the terms of the required form of offer that they brought to plaintiff a purchaser who made an offer that was accepted. *Chicago Title & Trust Co. v. Guild,* 323 Ill. App. 608; *Goldstein v. Setka,* 195 Ill. App. 584. In the instant case the offer these defendants submitted on behalf of Rich had been rejected by plaintiff, a right which was reserved to plaintiff in the very offer submitted by Rich. It appears clearly these defendant brokers knew the only way they could obtain the property for Rich and his associates was through an assignment of Irwin's contract. Having taken an assignment of Irwin's contract, running to Zisook as the nominee for Rich and his associates, they took it

with notice of the rights of all of the parties named in Irwin's contract. Kulwin was named as the broker in the Irwin contract, and it will be remembered in this connection that there was the recital in the Irwin contract that Kulwin "is the only broker in any way involved in this offer." It nowhere appears in evidence that defendants Nichols and Cook & Jackson, Inc., prior to or at the time of the assignment of the Irwin contract, had given the plaintiff any notice or made any claim that they would be entitled to the real estate commission instead of Kulwin. Their joint broker, Zisook, who has not been charged with any collusion, accepted the contract of Irwin, and in the face of the recital in the Irwin contract that Kulwin "is the only broker in any way involved in this offer," the claim that they were the procuring cause in the purchase of said real estate is without merit. It was the Irwin contract, and no other, that was actually consummated.

The evidence in this record would be sufficient to defeat any action brought by Nichols and Cook & Jackson, Inc. against plaintiff for the commissions. If they would fail in their suit against plaintiff, it follows that they must likewise fail in this interpleader. Kulwin, the master concluded, was the broker entitled to the commission. The master was correct, and the chancellor erred in sustaining exceptions to the master's report and entering the decree appealed from.

The decree of the circuit court is reversed and the cause remanded with directions to overrule the exceptions to the master's report and enter a decree in favor of defendant Kulwin, as recommended by the master.

*Decree reversed and cause remanded with directions.*

NIEMEYER, P. J., and O'CONNOR, J., concur.